IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CLAUDE F. PARKER, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 5:13-CV-1201-RDP |
| } | |
| CAROLYN W. COLVIN, Commissioner } | |
| of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Claude F. Parker brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Administrative Law Judge ("ALJ") denying his claim for Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.     PROCEEDINGS BELOW**

Plaintiff filed for SSI on August 6, 2009 alleging a disability onset date of August 1, 2009. (Tr. 122, 138). Plaintiff's application was denied initially on December 29, 2009. (Tr. 11). Plaintiff then requested and received a hearing before ALJ Michael R. McGuire on November 17, 2011. (Tr. 122-28).[1] In his decision, dated December 27, 2011, the ALJ determined that Plaintiff has not been under a disability within the meaning of the Act since August 6, 2009, the date of Plaintiff's application. (Tr. 14). After the Appeals Council denied

---

[1] Plaintiff was represented by attorney Melissa Horner during his hearing before the ALJ on November 17, 2011. (Tr. 26).

Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was fifty-three years old and had a tenth-grade education. (Tr. 29-31). Plaintiff reported a collapsed lung, neck injury, and back problems as limiting his ability to work. (Tr. 138). Plaintiff further alleged chronic neck and back pain, respiratory problems,[2] depression,[3] anxiety, hypertension, lack of grip strength, and blurred vision.[4] In discussing his lack of income with the ALJ, Plaintiff stated that he had quit many of his jobs in the past due to problems associated with drugs and alcohol.[5] (Tr. 48-50).

With regard to his domestic life, Plaintiff reported to the ALJ the following when asked what he did with himself all day: "I get up and I go to the bathroom, sometime[s] I might eat a bowl of cereal, then go back to bed." (Tr. 47). Plaintiff explained to the ALJ that his back pain and low energy levels prevent him from staying out of bed for more than two hours at a time. (Tr. 47-48, 51-52). Plaintiff maintains his house, but is no longer able to perform much yard work. (Tr. 47-48). Plaintiff has mild difficulties in social functioning, which include troubles getting along with family members and a non-active lifestyle he claims were not present before his alleged disability. (Tr. 168).

Plaintiff has performed past relevant work as a tree service technician, a machine shop laborer, a chicken manufacturing plant employee, a mobile truck wash technician, and, most

---

[2] During the hearing, Plaintiff stated that his left lung had collapsed in 2001 and that he lacked energy because of his left lung's less than average performance. (Tr. 39). Medical records indicate that Plaintiff stated that he was a smoker at the time of his lung collapse. (Tr. 294).

[3] Plaintiff alleges that his depression is so severe that he has thoughts of burning down his residence while still inside. (Tr. 40-41). Plaintiff further alleges that his depression stems from losing his brother in 1998, losing his father in 2007, and losing his mother prior to the hearing before the ALJ. (Tr. 42).

[4] Plaintiff has stable cataracts with a best-corrected visual acuity of 20/70 in both eyes. (Tr. 246).

[5] Plaintiff, during his ALJ hearing, stated that "a lot of time I quit [my job], I was – like I say, I admit, I was on drugs way back yonder and alcohol . . . Got in drugs heavy, and alcohol . . ." (Tr. 48).

recently, as a driver for a windshield company. (Tr. 31, 50, 155-61). He served in entry-level roles when he was working full time, eight hours per day, five days per week. (Tr. 31). Plaintiff's work activities included standing and running a machine press, lifting objects of 100 pounds or more at times for the machine press line, running a chainsaw and other yard care equipment, stacking and packing boxes, and unloading delivery trucks. (Tr. 155-61). While working as a machine shop technician, tree service technician, and chicken plant employee, Plaintiff admits he was required to lift anywhere from 20 to 100 pounds at any given time. (Tr. 155-61). Plaintiff claims that he stopped working because of a collapsed lung, a neck injury, and back problems; he also alleges he experiences extreme difficulty breathing, fatigue, chest pain, neck and back pain, and numbness in his extremities. (Tr. 29, 32, 38-39, 40-42, 138). Specifically, Plaintiff reports that he experiences pain in his neck and numbness in his hands to the point that he describes his grip strength as "seems like it just give[s] out on me." (Tr. 46).

During his alleged period of disability, Plaintiff was primarily seen by physicians at the Good Samaritan Health Clinic from January through November 2010. (Tr. 268-94). Medical records reveal that Plaintiff was treated for hypertension, depression, and chronic pain issues when first admitted to Good Samaritan. (Tr. 268-94). Good Samaritan's medical records also indicate that Plaintiff's "non-compliance with [taking his prescription medications was] not helping his case for disability." (Tr. 271). The physicians noted that Plaintiff had worsening depression and also that he was seeking Lortab, a narcotic pain reliever, although he was already prescribed medicine for his alleged chronic pain symptoms. (Tr. 269-70).

In October 2009, prior to receiving treatment at Good Samaritan Health Clinic, Plaintiff was referred to Dr. Dinesh Gandhi, a state-hired consultative examiner, for a disability examination. (Tr. 231). In his evaluation, Dr. Gandhi found Plaintiff to be "alert and oriented to

the time and place," and also found that he had "normal tone and power in upper and lower extremities" with "no neck rigidity." (Tr. 232). Nonetheless, Dr. Gandhi diagnosed Plaintiff with neck pain, lower back pain, and possible chronic obstructive pulmonary disease, and noted that Plaintiff was not taking any prescribed medication to treat his symptoms. (Tr. 231-233). Dr. Gandhi indicated that Plaintiff's grip strength in both hands was normal. (*Id.*). Also, a pulmonary function test taken on October 29, 2009 revealed severe pulmonary obstruction. (*Id.*). However, a subsequent pulmonary function test taken at Cullman Regional Medical Center on December 3, 2009, revealed greater lung functioning than expected and no problems were identified pertaining to the latter pulmonary function test. (Tr. 251-55). Dr. Gandhi concluded his evaluation of Plaintiff by stating, "He is able to function independently. He is able to hear and understand the conversation normal[ly]." (Tr. 233).

On December 15, 2009, the state agency medical consultant performed a physical summary and physical residual functional capacity report on Plaintiff and reported the following: "[Plaintiff] is credible as it relates to his vision[6] . . . [Plaintiff] has significant limitations on his daily functions." (T1. 265). The medical consultant determined that Plaintiff was capable of work at the medium level and that he had limited far and near visual acuity. (Tr. 259-65). The ALJ found Plaintiff somewhat more restricted; specifically, the ALJ found that Plaintiff "should only perform postural activities on occasion . . . and have only occasional exposure to pulmonary irritants." (Tr. 19).

In addition to the foregoing diagnoses, Plaintiff was also examined and treated by Cullman Mental Health Care in December 2010, and more recently in July 2011. (Tr. 307-09, 310-27). In 2010, Plaintiff appeared at Cullman Mental Health Care and complained of

---

[6] On November 3, 2009, Dr. William E. Holcomb, a state-hired consultative ophthalmologist, examined Plaintiff. (Tr. 20). Dr. Holcomb noted that Plaintiff's best-corrected visual acuity was 20/70 (due to bilateral cataracts) and that Plaintiff should avoid driving. (Tr. 19, 246).

depression and anxiety, to which the "[t]herapist offered active listening and CBT to aid in processing underlying feelings." (Tr. 308). Later, in 2011, Plaintiff again appeared at Cullman Mental Health Care complaining of the same symptoms; this time, he was diagnosed with major depressive disorder, recurrent, severe without psychotic features. (Tr. 310-27). The professionals at Cullman Mental Health Care indicated that Plaintiff needed to "[l]earn coping skills to alleviate symptoms," and that Plaintiff was "taking medication as prescribed including dosage." (Tr. 312, 319).

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert ("VE"). (Tr. 55). The ALJ asked if a person with the same age, education, vocational background could

> on occasion lift or carry 50 pounds, frequently 25, stand, walk, or sit for six hours in an eight hour day, push or pull 50 pounds, engage in occasional postural activities . . . need jobs or a work situation where he can learn the job by demonstration, and is not called upon to read print below the size of print in a children's book . . . understand, carry out to successful completion, simple tasks. Could this person do the job [Plaintiff] used to do?

(Tr. 55-56). The VE responded to the ALJ's question by stating that, "[i]t would be borderline but given that he has done it in the past, I believe it would be – at least as he performed it – I see available jobs." (Tr. 56). The ALJ posited a second question to the VE asking, "In terms of the vision requirements and the hypothetical would that impact his ability to drive?" (Tr. 56). The VE responded that, "[a]s long as he can pass the driving test then he can certainly do this." (Tr. 57). Next, the ALJ asked, "If I determine that he couldn't do his past relevant work, would there be other jobs available?" (Tr. 57). In response, the VE stated that there were "certainly" other appropriate possible positions, including, but not limited to, docket worker, laundry worker, janitorial worker, and general laborer. (Tr. 55-59). The ALJ then posed a final hypothetical question, this time inquiring as to whether the jobs listed as appropriate positions for Plaintiff by

5

the VE are "consistent . . . with the way they're described in the dictionary of occupational titles," to which the VE responded affirmatively.  (Tr. 58).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ found that there exists a significant quantity of jobs in the national economy that Plaintiff could perform,[7] in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2 and that, therefore, Plaintiff is not disabled.  (Tr. 21).

## II.    ALJ DECISION

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

---

[7] According to the VE, at the time of Plaintiff's hearing before the ALJ there were 3,500 docket worker positions in Alabama, and 211,000 docket worker positions available nationally; also at the time of the ALJ hearing, the VE stated that there were 5,000 general labor positions available in Alabama and 433,000 general labor positions available nationwide. (Tr. 57-58).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has a combination of severe impairments of bilateral cataracts with a visual acuity of 20/70 in both eyes, chronic obstructive pulmonary disease, and major depressive disorder, recurrent, that satisfies the second prong of the analysis, as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 16). The ALJ also found Plaintiff's back pain, lack of grip strength and numbness in extremities, and hypertension to be non-severe impairments because "they cause [no] more than a minimal limitation on [Plaintiff]'s activities of daily living." (*Id.*). With regard to the third prong, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20

C.F.R. § 404, Subpart P, Appendix 1 and discussed Plaintiff's impairments. (Tr. 16). The ALJ found that all of these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 16-21).

First, while the evidence does indicate that Plaintiff suffers from chronic obstructive pulmonary disease, "there are no medically documented records showing . . . test results equal to or below the level required to meet a listing." (Tr. 17). Second, as it relates to Plaintiff's vision, there is no evidence that the remaining vision in Plaintiff's better eye "after best correction" is 20/200 or less, "nor is there evidence that [Plaintiff] is unable to participate in visual acuity testing or has clinical findings that show that fixation and visual-following behavior are absent in his better eye," and thus Plaintiff did not meet or medically equal the criteria of Listing 2.02. (*Id.*). Finally, Plaintiff's mental impairments have not resulted in "more than moderate" limitations and have not involved "repeated episodes of decompensation." (*Id.*).

In the final steps of the analysis, the ALJ found that Plaintiff is unable to perform his past relevant work as a driver. (Tr. 20). However, based on the four hypothetical questions posed to the VE, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC, Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found Plaintiff "not disabled." (Tr. 21).

### III. PLAINTIFF'S ARGUMENTS FOR REVERSAL

Plaintiff presents several arguments for reversal: (1) there is no evidence that he can perform medium work; (2) the ALJ erred because, even if he was 53 when he applied for SSI, the ALJ should have also analyzed his eligibility for SSI under the grid rules for persons of advanced age (55 and older) from January 2011 forward; (3) the ALJ erred by finding that he had "previous work experience" as a driver because he was paid in cash and his employer

8

withheld no money for social security or Medicare, and therefore his claims that his "past work experience" is actually "none" for purposes of social security disability, and (4) the ALJ's treatment of his suicidal thoughts demonstrates the ALJ may have had some preconceived notions regarding his credibility and mental health condition. (Pl.'s Mem. 12-14, 17).

## IV. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. DISCUSSION

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A. The ALJ Did Not Err in Finding That Substantial Evidence Supports the Conclusion That Plaintiff Has the RFC to Perform Medium Work

The ALJ, after careful consideration of the record, found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following exceptions: he is only able to understand, remember, and carry out simple tasks that can be learned by demonstration, and do not require him to read print below the size found in children's books. (Tr. 18). In order to determine whether Plaintiff could perform his past relevant work at step four, or other work at step five of the sequential process, the ALJ was required to assess Plaintiff's RFC. (Tr. 18-20). *See* 20 C.F.R. § 416.920(e).

A claimant's RFC is an assessment based on the relevant evidence, of what an individual can do in a work setting despite his limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1) to (a)(3). Plaintiff contends that there is no evidence that he can perform medium work,[8] and that the ALJ erred in his RFC determination. (Pl.'s Mem. 12). The court disagrees. The ALJ explained Plaintiff's situation succinctly when he stated, "[w]hile I do recognize [Plaintiff] experiences some mental and physical limitations due to his impairments, I do not find that these limitations totally preclude hi[m] from performing basic work activities." (Tr. 20). There is substantial evidence which supports the ALJ's findings.

---

[8] Plaintiff claims that the weight of medical evidence does not support the conclusion that he can lift 50 pounds or that he is able to stand for a period of 6 hours – both are requirements under the "medium work" classification. (Pl.'s Mem. 12). Plaintiff alleges that his back pain is too severe to be able to complete the lifting required under the "medium work" designation. (*Id.*).

Notably, the ALJ fully and completely considered Plaintiff's physical examinations, treatment, diagnostic test results, and other evidence contained in the medical and treatment records from his treating physicians, as well as Plaintiff's testimony during the hearing when making his RFC determination. (Tr. 18-20). In making an RFC determination, the ALJ must consider all relevant evidence, including:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption of routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

SSR 96-8p, 1996 WL 374184, at *4-5 (July 2, 1996). However, an ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to show that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). *See also Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 263 (11th Cir. 2009). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c). *See also Cooper v. Astrue*, 373 Fed. Appx. 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor"). In the instant case, the ALJ considered Plaintiff's medical condition as a whole and determined that Plaintiff has a RFC to perform medium work. (Tr. 18-20).

The ALJ considered Plaintiff's allegations of respiratory problems, depression, fatigue, and blurred vision and, after "careful consideration of the evidence," found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting

11

effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual function capacity assessment." (Tr. 19). Although Plaintiff asserts that he cannot work and is fatigued due to his reported COPD, the medical evidence of record does not support the degree of functional limitation claimed by Plaintiff. (*See* Tr. 239-42, 252-58). To be sure, in October 2009, Dr. Gandhi performed a pulmonary function test which revealed severe obstruction, however, a subsequent pulmonary function test, performed two months later, revealed a pulmonary function report with no significant issues (and thus excess airflow than that expected from someone with COPD and "severe obstruction"). (*Id.*).

Plaintiff was also treated by the Good Samaritan Health Clinic for depression, hypertension, and chronic pain. (Tr. 19, 269-70). Good Samaritan noted that Plaintiff was non-compliant with his medication. (Tr. 271). In addition, Plaintiff was treated by Dr. Holcomb, a state-hired ophthalmologist, and it was found that his best-corrected visual acuity was 20/70 in both eyes due to stable cataracts. (Tr. 245-47). Finally, Plaintiff also received treatment from Cullman Mental Health Care, where he was diagnosed with major depressive disorder, recurrent, severe without psychotic features. (Tr. 317).

The state agency medical consultant, whose job it is to recommend a designation for a claimant within a certain RFC category, determined that Plaintiff was capable of work at the medium level, but that he has near and far visual acuity. (Tr. 19). The ALJ actually found Plaintiff even more restricted. Specifically, the ALJ determined that Plaintiff should only "perform postural activities on occasion . . . [and] have only occasional exposure to pulmonary irritants." (Tr. 19). The designation of Plaintiff's RFC as "medium work," with added restrictions specific to his conditions, is supported by substantial evidence of record and Plaintiff's testimony at his disability hearing. Importantly, there is no treating source in the record that has indicated

that Plaintiff is unable to perform work activities on a daily basis. (Tr. 20). Because this court's review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), the court finds that the ALJ did not err by assigning Plaintiff an RFC to perform a range of medium work with added restrictions. The record provides substantial evidence to support the ALJ's assessment of Plaintiff's RFC. Accordingly, Plaintiff's argument that he has a combination of impairments that render him unable to work is without merit. (*See* Pl.'s Mem. 16).

### B. The ALJ Did Not Err by Using Grid Rules From Date of Application for Disability Because Vocational Expert Was Used in Conjunction With the Grids

Plaintiff's second argument is that the ALJ erred by analyzing his eligibility for SSI under the grid rules for persons closely approaching advanced age (50-54), and should have analyzed his eligibility under the grid rules for persons of advanced age (55 or older). Plaintiff was 53 at the time he filed applied for SSI, but he was 55 at the time of his hearing. (Pl.'s Mem. 13). The Commissioner responds by noting that the ALJ recognized that Plaintiff's limitations precluded the strict application of the grids and thus properly obtained the assistance of a VE in determining whether other work exists that Plaintiff can perform. (Comm'r Mem. 10). *See* 20 C.F.R. §§ 416.969, 416.969a(d); *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004); *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). The court agrees with the Commissioner.

After assessing Plaintiff's RFC and finding at the fourth step of the sequential evaluation process that Plaintiff could not perform his past relevant work, the ALJ had to determine at the

fifth (and final) step—whether Plaintiff could perform other work. (Tr. 20-21). *See* 20 C.F.R. § 416.920(a)(4)(iv) to (v). As recognized by the ALJ, the Eleventh Circuit has held that when exertional and non-exertional limitations are present (and that is the case here), the grid rules may not be used for a direct finding of disability or no disability; rather, the ALJ may only use the grids as a framework for his decision, usually with a VE providing supplemental information. *See* 20 C.F.R. §§ 416.969, 416.969a(d); *Phillips*, 357 F.3d at 1242; *Wolfe*, 86 F.3d at 1077-78. Importantly, when a claimant's RFC and other vocational factors do not fit the criteria of a particular grid rule, the generally preferred course of action is to obtain testimony from a VE regarding whether other work exists that the claimant can perform. *See Phillips*, 357 F.3d at 1242-43; *Wolfe*, 86 F.3d at 1077-78.

Here, the ALJ properly relied on the VE's testimony and the framework set forth by the grids in reaching his conclusion that Plaintiff could perform other work and that he was not disabled. (Tr. 20-21). The VE, when asked whether there were jobs available for an individual of the same age, education, and vocational background as Plaintiff, stated that there were three representative jobs that existed in significant numbers in the national economy that an individual of Plaintiff's age, education, vocational background, and RFC could perform.[9] (Tr. 55-59). Because it is clear that the ALJ's determination as to what other jobs Plaintiff is able to perform was not based solely on his reliance upon the grids, but instead was grounded upon his conclusions which were consistent with the testimony of the VE, a determination of whether Plaintiff was a person of "advanced age" or a person "approaching advanced age" under the grid rules guidelines is unnecessary. *See Miller v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 631, 635 (11th Cir. 2007) ("[W]here a claimant is unable to perform a full range of work at a given

---

[9] In light of the record evidence and the ALJ's correct analysis, Plaintiff's contentions that he should be deemed disabled under the grids because he lacks fine dexterity due to his missing digit, as well as his argument that he can only perform sedentary work, are without merit. (*See* Pl.'s Mem. 15-16).

functional level or has non-exertional impairments that significantly limit basic work skills, the ALJ must not exclusively rely upon the grids; rather, the ALJ should consider testimony of the VE to establish job availability."); *Fashaw v. Astrue*, 2011 WL 1237578, at *4 (M.D. Fla. Feb. 15, 2011) (holding that the question of whether claimant should have been treated as a person of advanced age or a person closely approaching advanced age "inconsequential" where the ALJ did not exclusively rely on the grids, but also utilized VE testimony in making his disability determination). Thus, the record evidence and the VE's testimony provide substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was "not disabled."

> **C.    Plaintiff's Job as a Driver is Still Past Relevant Work Although He Has No Social Security Earnings Whatsoever During the Past Fifteen Years**

Plaintiff argues that his "previous work experience" is actually "none" for purposes of his social security disability claim because he was "paid in cash as a[n] occasional 'driver' and . . . [his] employer withheld no money for social security or medicare at all." (Pl.'s Mem. 14). Plaintiff bases this argument upon Grid Rule 203.10. That rule provides that a person approaching advanced age, with an RFC of medium work and limited education, is "disabled" if the claimant has no "previous work experience." (*Id.*). The Commissioner responds by stating that Plaintiff's own testimony reveals that he worked from 1998 to 2001 as a driver. (Comm'r Mem. 13) (Tr. 50, 53-55, 139). Work experience is relevant if the work was done within the prior fifteen years, lasted long enough for the claimant to learn to do the job, and was substantial gainful activity. *See* 20 C.F.R. § 416.965(a).

Plaintiff's assertion that he has no previous work experience is far wide of the mark. Plaintiff stipulated to his past work experience as a driver during his own disability hearing before the ALJ. (Tr. 53-55). Therefore, the record provides substantial evidence that Plaintiff's work as a driver was past relevant work. It is simply of no moment here that Plaintiff claims his

previous employer violated the law by failing to withhold taxes, social security, and medicare from his wages. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) (finding that claimant bears the burden of proving work was not past relevant work).

> D. **The ALJ's Interaction With Plaintiff Regarding Plaintiff's Thoughts of Suicide Do Not Indicate That the ALJ Was Influenced By Extra-Judicial Bias**

Finally, Plaintiff contends that a "bizarre colloquy between the ALJ and [Plaintiff] at the hearing regarding [his] occasional suicidal thoughts . . . indicates that the ALJ may have had some preconceived notions regarding [Plaintiff]'s credibility and mental health condition." (Pl.'s Mem. 16-17). Specifically, Plaintiff alleges the following dialogue demonstrates bias on behalf of the ALJ:

> Q  What's the plan?
> A  Taking – just gas, torching the house –
> Q  You can't use the gas system, your brother's turned it off.
> A  The what now?
> Q  Can't be using the gas in the house, your brother turned it off.
> A  I mean regular gas.
> Q  Regular gas?
> A  Yes, sir.
> Q  What's regular gas?
> A  I get from the –
> Q  You mean unleaded and regular –
> A  Regular –
> Q  -- and premium, what are you talking about gas?
> A  Regular gas.
> Q  What's regular gas?
> A  Just like you get from a gas station, I guess.
> Q  Okay. I guess. And how would you – tell me about this plan to kill yourself with gas, I guess you mean gasoline?
> A  Right.
> Q  Okay and what are you going to do?
> A  Just take and put it in the house if I have to, every room, take and spread some on the carpet or whatever and light her.
> Q  Yeah. You're going to burn the house down?
> A  Yep, if it comes to it.
> Q  And what makes you – and you plan to be in it when you burn it down?
> A  Here lately, yeah.

> Q  Huh?
> A  Yes, sir.  And with depression, anxiety and this and that I just can't –
> Q  Well what makes you think when it gets pretty hot in the house, you won't run out?
> A  I doubt it.
> Q  Why do you doubt it?
> A  I just –
> Q  I would.

(Tr. 40-41).  For reasons to follow, the court concludes that the foregoing dialogue does not demonstrate reversible bias.

A presumption of honesty and integrity exists with respect to those who serve as adjudicators for administrative agencies.  *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  The burden of overcoming this presumption rests with the party making the assertion of bias.  *See McClure*, 456 U.S. at 196.  The presumption can be overcome by "a showing of conflict of interest or some other specific reason for disqualification."  *Id.* at 195.  In order to be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).  Plaintiff has failed to present evidence sufficient to overcome the presumption of honesty and integrity that rests with the ALJ.

Although of questionable utility for purposes of the hearing, the colloquy between Plaintiff and the ALJ regarding Plaintiff's plans to commit suicide does not demonstrate bias that "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *Id.*  Other than citing the less than sympathetic comments of the ALJ at Plaintiff's hearing, Plaintiff has not produced any evidence which suggests "a conflict of interest or some other specific reason" why the ALJ should not be presumed an adjudicator of honesty and integrity.  *See McClure*, 456 U.S. at 195.

The ALJ fully and clearly articulated the reasons he relied upon in reaching his conclusion that Plaintiff is not disabled (Tr. 14-21), and substantial evidence supports the ALJ's findings. Accordingly, this court finds that the ALJ has not demonstrated disqualifying bias. *See Martin*, 894 F.2d at 1529.

## VI.  CONCLUSION

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 7, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE